T.C. Memo. 2007-136

UNITED STATES TAX COURT

TERESA G. BUTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21334-03.                  Filed May 31, 2007.

Teresa G. Butner, pro se.

<u>Edwina L. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Pursuant to section 7443A[1] and Rules 180 and 183, this case was assigned to and heard by Special Trial Judge Stanley J. Goldberg.  His recommended findings of fact and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

conclusions of law were filed and served upon the parties.

Petitioner filed objections (petitioner's objections) to the Special Trial Judge's recommended findings of fact and conclusions of law. Respondent did not.

In petitioner's objections, petitioner advances many of the same contentions and arguments that she advanced at trial and/or in her posttrial briefs. We conclude that the Special Trial Judge gave appropriate consideration to those contentions and arguments in making his recommended findings of fact and conclusions of law.

In petitioner's objections, petitioner also advances the following three contentions:

> [1] There is a legal means by which the Petitioner's husband [William E. Butner] would not have to pay F.I.C.A. [Federal Insurance Contributions Act] taxes.[2] It was to his advantage to do so, however he was prohibited from doing so by the confiscations and exorbitant expenses arising out of the actions of the Bankruptcy Trustee over a period of many years.
>
> [2] * * * the Petitioner has never acquired assets jointly with her husband.
>
> [3] * * * There is a distinct difference in income taxes and F.I.C.A. taxes. The only reason F.I.C.A. taxes are reported on the income tax return is because

---

[2]Income earned by a self-employed individual, as William E. Butner (Mr. Butner) was during the years at issue, is not subject to tax under sec. 3101, i.e., tax under the Federal Insurance Contributions Act (FICA tax). Rather, such income is subject to tax under sec. 1401, i.e., tax under the Self-Employment Contributions Act of 1954 (self-employment tax). Self-employment tax is imposed by the Code in subtitle A relating to "Income Taxes". See sec. 1401.

such taxes are calculated and based on the earnings of
the person responsible for such income. [Reproduced
literally.]

With respect to the first contention quoted above, we conclude that that contention is not pertinent to resolving the issue in this case and does not require any change to the Special Trial Judge's recommended findings of fact and conclusions of law.

With respect to the second contention quoted above, we note initially that the record does not establish that petitioner "never acquired assets jointly with her husband." Assuming arguendo that the record had established the second contention quoted above, we conclude that that contention would not require any change to the Special Trial Judge's recommended findings of fact and conclusions of law.

With respect to the third contention quoted above, we note initially that, as discussed supra note 2, income earned by a self-employed individual is subject to self-employment tax, and not FICA tax. Moreover, an individual having net earnings from self-employment of $400 or more for a taxable year is required to make a return with respect to the self-employment tax imposed on such earnings. Sec. 6017. A husband and wife may make a single return jointly, sec. 6013(a), and are jointly and severally liable for the entire liability shown due in such a return, sec. 6013(d)(3), including the liability with respect to net earnings

from self-employment, sec. 1.6017-1(b)(2), Income Tax Regs.[3]

We conclude that the third contention quoted above does not

require any change to the Special Trial Judge's recommended

findings of fact and conclusions of law.

In petitioner's objections, petitioner also contends that

"Nothing in the record substantiates the findings of the" Special

Trial Judge. We disagree. Based upon our examination of the

entire record in this case, we conclude that that record amply

supports the Special Trial Judge's recommended findings of fact

and conclusions of law. In so concluding, we have given appro-

priate deference to the Special Trial Judge's recommended find-

ings of fact, as required by Rule 183(d).[4]

We have made changes to the grounds upon which the Special

Trial Judge held that the Court has jurisdiction over the instant

case, where no deficiency has been asserted, to review the denial

of equitable relief under section 6015(f). That is because,

after the Special Trial Judge's recommended findings of fact and

conclusions of law were filed and served, there were judicial and

---

[3]As discussed below, in certain circumstances, a spouse may obtain relief from joint and several liability for self-employ-ment tax on net earnings from self-employment reported in a joint return if the requirements of sec. 6015 are satisfied.

[4]Rule 183(d) requires (1) that due regard be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses and (2) that the findings of fact recommended by the Special Trial Judge be presumed to be correct.

- 5 -

legislative developments relating to our jurisdiction under section 6015(e)(1) to review such a denial.

We have also made editorial, stylistic, clarifying, and organizational changes to the Special Trial Judge's recommended findings of fact and conclusions of law.

We conclude that the recommended findings of fact and conclusions of law of Special Trial Judge Stanley J. Goldberg, as modified and set forth below, should be adopted as a report of the Court.

This case arose from petitioner's request for relief under section 6015 for each of the taxable years 1994, 1995, 1998, and 1999. We hold that we have jurisdiction to review respondent's denial of relief under section 6015(f) for each of those years. We further hold that respondent did not abuse respondent's discretion in denying petitioner relief under that section for each of the taxable years 1994, 1995, 1998, and 1999.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found except as stated herein.

Petitioner resided in Hickory, North Carolina, on the date she filed the petition in this case.

Petitioner and her spouse, Mr. Butner, were married in 1984 and were still married at the time of the trial.

During 1994, 1995, 1998, and 1999, petitioner lived on a

10-acre estate and drove a sports utility vehicle. Real property acquired by petitioner and Mr. Butner, including their residence and two vacant lots, is titled in petitioner's name only. Vehicles acquired by petitioner and Mr. Butner are titled in petitioner's name only.

During 1994, 1995, 1998, 1999, and 2000, Mr. Butner, an attorney who practiced law as a sole practitioner,[5] employed petitioner as a secretary, even though she had no secretarial training. During 1994,[6] 1995, 1998, 1999, and 2000, petitioner received from Mr. Butner secretarial wages of $2,600, $11,060, $16,952, $17,278, and $16,952, respectively, from which no income tax was withheld.

On April 24, 1995, a trust fund recovery penalty of $276,226.86 was assessed against Mr. Butner in connection with unpaid payroll taxes of Amtruc, Inc., for the last two quarters of 1992 and the first two quarters of 1993. On October 25, 1999, a notice of Federal tax lien was filed against Mr. Butner with respect to that liability.

In 1996, the U.S. Bankruptcy Court for the Western District

---

[5]During 1994, 1995, 1998, and 1999, Mr. Butner, who employed four or five people who were not lawyers in his law practice, did not make any estimated tax payments with respect to those respective years, even though he was self-employed.

[6]During 1994, petitioner also received from Keyport Life Insurance Co. a gross distribution of $4,250.12, from which income tax of $91.67 was withheld.

of North Carolina (Bankruptcy Court) entered judgments (bankruptcy judgments) in excess of $3 million against petitioner and Mr. Butner. As of the time of the trial in this case, those judgments had not been satisfied.

In December 2002, Mr. Butner was incarcerated in connection with bankruptcy fraud charges, and on November 22, 2004, he was released from prison.

As described in detail below, petitioner and Mr. Butner filed jointly a Federal income tax (income tax) return for each of the taxable years 1994, 1995, 1998, and 1999. In each of those returns, they showed petitioner's occupation as "homemaker".

On January 20, 1998, petitioner and Mr. Butner signed Form 1040, U.S. Individual Income Tax Return, for the taxable year 1994 (1994 Form 1040). At the time petitioner signed that form, she was aware that the bankruptcy judgments had been entered against Mr. Butner and herself and had not been satisfied. On January 20, 1999, petitioner and Mr. Butner filed late their 1994 Form 1040. In that form, petitioner and Mr. Butner reported self-employment tax owed of $10,054, income tax withheld of $92, and a total amount owed of $10,474, which included an estimated tax penalty owed of $512.

On May 24, 1999, an assessment of self-employment tax of $10,054 was made for the taxable year 1994, against which was

applied income tax withholding of $92. On the same date, interest of $5,057.39 and penalties of $4,731.95 were also assessed for that year. As of May 24, 1999, the total unpaid assessed liability for the taxable year 1994 was $19,751.34. At the time in June 2003 respondent's Appeals officer (Appeals officer) considered petitioner's request for relief under section 6015, the total unpaid assessed liability for that year was the same amount, excluding any addition to tax and interest accrued after May 24, 1999.[7]

On August 25, 2000, petitioner and Mr. Butner filed Form 1040X, Amended U.S. Individual Income Tax Return, for the taxable year 1994 (1994 Form 1040X). In that form, petitioner and Mr. Butner reported no self-employment tax due, no tax liability, and they claimed an overpayment and a refund of $92. Respondent did not accept as correct the 1994 Form 1040X of petitioner and Mr. Butner and did not allow that claim for refund.

On January 20, 1998, petitioner and Mr. Butner signed Form

---

[7]The parties stipulated that, at the time in June 2003 the Appeals officer considered petitioner's request for relief under sec. 6015, the total unpaid assessed liability for the taxable year 1994 was $19,759.34, excluding any addition to tax and interest accrued after May 24, 1999. We presume that that stipulation was based upon a mathematical error. That is because the record establishes that, at the time in question, the total unpaid assessed liability for the taxable year 1994 was $19,751.34, excluding any addition to tax and interest accrued after May 24, 1999. The parties' stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

1040 for the taxable year 1995 (1995 Form 1040). At the time petitioner signed that form, she was aware that the bankruptcy judgments had been entered against Mr. Butner and herself and had not been satisfied. On March 10, 1999, petitioner and Mr. Butner filed late their 1995 Form 1040. In that form, petitioner and Mr. Butner reported self-employment tax owed of $10,198 and a total amount owed of $10,198.

On May 24, 1999, an assessment of self-employment tax of $10,198 was made for the taxable year 1995. On the same date, interest of $3,682.21 and penalties of $4,788.90 were also assessed for that year. As of May 24, 1999, the total unpaid assessed liability for the taxable year 1995 was $18,669.11. At the time in June 2003 the Appeals officer considered petitioner's request for relief under section 6015, the total unpaid assessed liability for that year was the same amount, excluding any addition to tax and interest accrued after May 24, 1999.

On August 25, 2000, petitioner and Mr. Butner filed Form 1040X for the taxable year 1995 (1995 Form 1040X). In that form, petitioner and Mr. Butner reported no self-employment tax due and no tax liability. Respondent did not accept as correct the 1995 Form 1040X of petitioner and Mr. Butner.

On October 25, 1999, notices of Federal tax lien were filed against petitioner and Mr. Butner with respect to their respective liabilities for the taxable years 1994 and 1995.

On October 14, 2000, petitioner and Mr. Butner signed Form 1040 for the taxable year 1998 (1998 Form 1040). At the time petitioner signed that form, she was aware (1) that the bankruptcy judgments had been entered against Mr. Butner and herself and had not been satisfied and (2) that respondent had issued notices of Federal tax lien with respect to the respective liabilities of petitioner and Mr. Butner for the taxable years 1994 and 1995. On October 18, 2000, petitioner and Mr. Butner filed late their 1998 Form 1040. In that form, petitioner and Mr. Butner reported self-employment tax owed of $8,935 and a total amount owed of $8,935.

On November 20, 2000, an assessment of self-employment tax of $8,935 was made for the taxable year 1998. On the same date, interest of $1,484.13 and penalties of $2,903.87 were also assessed for that year. As of November 20, 2000, the total unpaid assessed liability for the taxable year 1998 was $13,323. At the time in June 2003 the Appeals officer considered petitioner's request for relief under section 6015, the total unpaid assessed liability for that year was the same amount, excluding any addition to tax and interest accrued after November 20, 2000.[8]

_____

[8]The parties stipulated that, at the time in June 2003 the Appeals officer considered petitioner's request for relief under sec. 6015, the total unpaid assessed liability for the taxable year 1998 was $13,327, excluding any addition to tax and interest

(continued...)

On October 14, 2000, petitioner and Mr. Butner signed Form 1040 for the taxable year 1999 (1999 Form 1040). At the time petitioner signed that form, she was aware (1) that the bankruptcy judgments had been entered against Mr. Butner and herself and had not been satisfied and (2) that respondent had issued notices of Federal tax lien with respect to the respective liabilities of petitioner and Mr. Butner for the taxable years 1994 and 1995. On October 18, 2000, having obtained extensions of time within which to file, petitioner and Mr. Butner timely filed their 1999 Form 1040. In that form, petitioner and Mr. Butner reported self-employment tax owed of $11,582 and a total amount owed of $12,059, which included an estimated tax penalty of $477.

On November 27, 2000, an assessment of self-employment tax of $11,582 was made for the taxable year 1999. On the same date, interest of $661.79 and penalties of $940.28 were also assessed for that year. As of November 27, 2000, the total unpaid assessed liability for that year was $13,184.07. At the time in June 2003 the Appeals officer considered petitioner's request for

---

[8](...continued)
accrued after Nov. 20, 2000. We presume that that stipulation was based upon a mathematical error. That is because the record establishes that, at the time in question, the total unpaid assessed liability for the taxable year 1998 was $13,323, excluding any addition to tax and interest accrued after Nov. 20, 2000. The parties' stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. at 195.

relief under section 6015, the total unpaid assessed liability for that year was the same amount, excluding any addition to tax and interest accrued after November 27, 2000.

As a result of net operating loss carryovers from prior taxable years, there is no income tax liability due for any of the taxable years 1994, 1995, 1998, and 1999. However, there are self-employment tax liabilities for those years of $10,054, $10,198, $8,935, and $11,582, respectively, all of which are attributable to Mr. Butner.

On December 31, 2001, petitioner and Mr. Butner filed late Form 1040 for the taxable year 2000 that showed a tax liability of $7,807 that was unpaid.

On January 6, 2003, petitioner filed late Form 1040 for the taxable year 2001 that showed a tax liability of $141, which she paid at that time.

On January 22, 2001, petitioner timely filed Form 8857, Request for Innocent Spouse Relief (Form 8857), with respect to each of the taxable years 1994, 1995, 1998, and 1999. Petitioner and Mr. Butner resided together during the 12 months preceding petitioner's filing her respective Forms 8857 with respect to those years.

In Form 8857 that petitioner filed for each of the years at issue, she requested relief under section 6015 from joint and

several liability for each of those years.[9]  In each of those forms, the only reason given by petitioner for seeking relief was that the liabilities in question "arose out of payroll taxes for my husband in his business."

By letter dated December 20, 2001, respondent's tax auditor requested that petitioner complete a questionnaire and explain why petitioner believed that she is entitled to relief under section 6015.  Around March 5, 2002, petitioner returned that questionnaire, in which she stated that relief should be granted because the "Taxes due on the returns were payroll taxes arising out of my husbands [sic] law practice."  In responding to the questionnaire, petitioner failed to answer the question relating to whether she was aware of the liability reported in Form 1040 that she and Mr. Butner filed for each of the taxable years 1994, 1995, 1998, and 1999 and whether she thought that such liability would be paid at the time of each such filing.  Petitioner admitted in the questionnaire that there was no plan for paying the liability reported in Form 1040 that she and Mr. Butner filed

[9]On Jan. 22, 2001, petitioner also filed Form 8857 with respect to each of the taxable years 1996 and 1997, in which she requested relief under sec. 6015 from joint and several liability for each of those years.  There were no unpaid liabilities reflected in the respective income tax returns that petitioner and Mr. Butner filed for the taxable years 1996 and 1997, and respondent determined no deficiency in tax for either of those years.  Petitioner did not place the taxable years 1996 and 1997 at issue in the instant case.  Our discussion hereinafter is limited to the taxable years 1994, 1995, 1998, and 1999.

for each of the years at issue, which was not paid at the time of each such filing.

On May 23, 2002, respondent issued a preliminary determination in which respondent denied petitioner's request for relief under section 6015 for each of the taxable years at issue. In so doing, that preliminary determination stated in pertinent part:

> You did not qualify for relief under Tier I [section 4.02 of Revenue Procedure 2000-15, 2000-1 C.B. 447] because you and your spouse did not live apart the 12 months prior to claim, you did not show that you had a reasonable belief that the tax was paid or would be paid when you signed the returns, and you failed to show that you would suffer an economic hardship if relief was denied.
>
> You did not qualify for relief under Tier II [section 4.03 of Revenue Procedure 2000-15] because the majority of factors used to make the determination were against granting relief. You did not review the returns prior to signing them. You knew when you signed them that you were not in a financial position to pay the liabilities timely. Although you and your spouse were advised to pay estimated taxes in subsequent years by a Federal Agent, you have not done so. Therefore, you are not in compliance with tax laws. You will not suffer a hardship if relief is denied. You can afford a monthly payment agreement based on the information available. [Reproduced literally.]

Around June 5, 2002, petitioner filed Form 12509, Statement of Disagreement, in which she protested respondent's preliminary determination. In that form, petitioner stated:

> I, Teresa B. Butner, disagree with the Internal Revenue Service determination because I have elected under Code Section 6015(b) to request spousal relief from the IRS's proposed assessment of self-employment taxes for the tax years 1994, 1995, 1998 and 1999. I believe I should be relieved from this tax liability because this liability is attributed to income which I had no owner-

ship in or control over.  These unpaid tax liabilities are attributable to my non-requesting spouse.  I wish to present the following factors which I ask that you consider:

(a) Had I filed a separate return, the tax liability would not have been included in my return.

(b) The tax liability reported.  I did not know and had no reason to know that the liability would not be paid.

(c) The tax liability is solely attributable to my spouse's income

I respectfully request that you consider the above and grant me equitable relief from the tax liabilities. [Reproduced literally.]

Around June 11, 2002, petitioner's respective Forms 8857 with respect to the taxable years 1994, 1995, 1998, and 1999 were transmitted to the Appeals Office for further consideration.

By letter dated August 14, 2002, the Appeals Office acknowledged receipt of petitioner's respective Forms 8857 for the taxable years at issue.  By letter dated March 19, 2003, an Appeals officer scheduled a telephonic conference for April 2, 2003.

At the time in June 2003 the Appeals officer considered petitioner's Forms 8857, petitioner owned a 2002 Chevrolet pickup truck and a 2002 Chevrolet Tahoe sports utility vehicle.

By letter dated June 16, 2003 (June 16, 2003 letter), the Appeals officer advised petitioner's representative, William J. Lawing, C.P.A., that although the Appeals officer had originally indicated that petitioner might be entitled to full relief under

section 6015(f), "the facts of this case do not merit such a determination." The Appeals officer noted in that letter that most of the factors set forth in Revenue Procedure 2000-15, 2000-1 C.B. 447 (Revenue Procedure 2000-15), weigh against relief. In the June 16, 2003 letter, the Appeals officer informed petitioner that, in order to change that conclusion, petitioner must provide certain additional information. A response deadline of June 30, 2003, was given. On or after September 15, 2003, petitioner's representative provided additional information to the Appeals officer.

On or about August 28, 2003, the Appeals officer prepared an Appeals Case Memorandum that set forth (1) all the facts and law that she considered in determining to uphold respondent's preliminary determination to deny relief under section 6015 and (2) her application of that law to those facts.

By letter dated September 11, 2003, and entitled "Subject: Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015", the Appeals Office informed petitioner that she was not eligible for relief under section 6015(b), (c), or (f).

At no time was petitioner abused by Mr. Butner. Nor has petitioner verified at any time that she would suffer an economic hardship if relief under section 6015 for the taxable years 1994, 1995, 1998, and 1999 were not granted.

On December 15, 2003, petitioner filed a petition with the Court for review of respondent's determination denying her request for relief under section 6015 with respect to each of the taxable years 1994, 1995, 1998, and 1999.

## OPINION

In general, each of the spouses who file jointly an income tax return is responsible for the accuracy of, and is jointly and severally liable for the entire liability shown due in, such return. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, a spouse may obtain relief from such joint and several liability if the requirements of section 6015 are satisfied.

Section 6015 applies to any liability for tax arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, that remain unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. In the present case, the respective liabilities of petitioner and Mr. Butner arose with respect to the taxable years 1994, 1995, 1998, and 1999. The respective liabilities of petitioner and Mr. Butner for the taxable years 1994 and 1995 arose before July 22, 1998, but remained unpaid as of that date. The respective liabilities of petitioner and Mr. Butner for the taxable years 1998 and 1999 arose after July 22, 1998. Section 6015 is applicable to the respective liabilities

of petitioner and Mr. Butner for the taxable years 1994, 1995, 1998, and 1999.

Section 6015(a)(1) provides that a spouse who made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax with respect to a joint return). Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c). Relief from joint and several liability under section 6015(b) or (c) is available only with respect to a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D) and (c)(1); see H. Conf. Rept. 105-599, at 252-254 (1998), 1998-3 C.B. 747, 1006-1008. If relief is not available under either section 6015(b) or (c), an individual may seek equitable relief under section 6015(f), which may be granted by the Commissioner of Internal Revenue (Commissioner) in the Commissioner's discretion.

Section 6015(b)

Section 6015(b) provides a spouse relief for an "understatement" (as defined in section 6662(d)(2)(A))[10] of tax in a joint income tax return that is attributable to erroneous items of the

---

[10]Sec. 6662(d)(2)(A) defines the term "understatement" as the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in such return.

other spouse.

In the present case, petitioner does not seek relief from an understatement in any of the income tax returns that she and Mr. Butner jointly filed for the taxable years 1994, 1995, 1998, and 1999, respectively. Rather, she seeks relief from the respective self-employment taxes that were shown due in such returns and that were not paid when she and Mr. Butner filed those returns. Because there is no understatement of tax for any of the taxable years 1994, 1995, 1998, and 1999, relief is not available to petitioner under section 6015(b). See Washington v. Commissioner, 120 T.C. 137, 146 (2003); see also Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).

Section 6015(c)

A taxpayer may elect to seek relief under section 6015(c) if (1) at the time of making the election, the taxpayer was no longer married to, or was legally separated from, the person with whom the joint return was filed, or (2) for the 12-month period preceding the time of making the election the taxpayer did not live with such person. If a taxpayer elects relief under section 6015(c), such taxpayer's "liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual" under section 6015(d). Relief is not available under section 6015(c) with respect to an unpaid liability reported in a return.

In the present case, petitioner is seeking relief from the respective self-employment taxes that were shown due in the income tax returns that she and Mr. Butner jointly filed for the taxable years 1994, 1995, 1998, and 1999, respectively, and that were not paid when they filed those returns. Because there is no "deficiency" for any of the taxable years 1994, 1995, 1998, and 1999, relief is not available to petitioner under section 6015(c) for any of those years. See Washington v. Commissioner, supra at 146-147; see also Hopkins v. Commissioner, supra.

Section 6015(f)

The only remaining opportunity for relief to petitioner is section 6015(f). We consider first whether we have jurisdiction to review respondent's denial of relief under section 6015(f) to petitioner where no deficiency has been asserted.

Before we issued our Opinion in Billings v. Commissioner, 127 T.C. 7 (2006), we held that we have jurisdiction under section 6015(e)(1) to review a denial of relief under section 6015, including section 6015(f). Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000). After Congress amended section 6015(e),[11] we held that "the amendment of section 6015(e) does not preclude our jurisdiction to review the denial of equitable

---

[11]Congress amended sec. 6015(e), effective Dec. 21, 2000, by adding the language "against whom a deficiency has been asserted". Consolidated Appropriations Act, 2001, Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763, 2763A-641.

relief under section 6015(f) where a deficiency has not been asserted." Ewing v. Commissioner, 118 T.C. 494, 505 (2002).

The United States Court of Appeals for the Ninth Circuit reversed the Court's holding in Ewing v. Commissioner, supra. Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002), vacating 122 T.C. 32 (2004). The United States Court of Appeals for the Eighth Circuit vacated and remanded Sjodin v. Commissioner, T.C. Memo. 2004-205, in which we held that we have jurisdiction under section 6015(e) to review the denial of relief under section 6015(f) where a deficiency has not been asserted. Sjodin v. Commissioner, 174 Fed. Appx. 359 (8th Cir. 2006), vacating and remanding per curiam T.C. Memo. 2004-205.

Thereafter, in Billings v. Commissioner, supra, we reconsidered our holding in Ewing v. Commissioner, 118 T.C. 494 (2002). We held in Billings that we do not have jurisdiction under section 6015(e)(1) to review the denial of relief under section 6015(f) where no deficiency has been asserted.

After we issued our Opinion in Billings, Congress passed the Tax Relief and Health Care Act of 2006 (Act), Pub. L. 109-432, 120 Stat. 2922. The Act amended section 6015(e)(1) to provide that this Court may review the Commissioner's denial of relief under section 6015 in any case where an individual requested relief under section 6015(f). Id. div. C, sec. 408(a), 120 Stat.

3061. The amendment applies "with respect to liability for taxes arising or remaining unpaid on or after the date of the enactment of this Act." Id. sec. 408(c), 120 Stat. 3062. The date of enactment of the Act was December 20, 2006.

After the Act amended section 6015(e)(1), we issued an Order in the instant case, in which we directed each party to file a response to that Order addressing the jurisdiction of the Court over this case in light of the amendment that the Act made to section 6015(e)(1). Petitioner filed no such response. Respondent filed a response in which respondent stated that the Court has jurisdiction to review respondent's denial of relief under section 6015(f) with respect to each of the taxable years 1994, 1995, 1998, and 1999. That is because, according to respondent, the liability due for each of those years remained unpaid as of December 20, 2006, the date of enactment of the Act.

We hold that we have jurisdiction over the instant case to review respondent's denial of relief under section 6015(f) with respect to each of the taxable years 1994, 1995, 1998, and 1999.

We consider now respondent's denial of relief under section 6015(f) to petitioner. Section 6015(f) provides:

SEC. 6015. RELIEF FROM JOINT AND SEVERAL LIABILITY ON
          JOINT RETURN.

          *       *       *       *       *       *       *

     (f). Equitable Relief.--Under procedures pre-
scribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief under that section was an abuse of discretion.  See Washington v. Commissioner, 120 T.C. at 146; Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, 114 T.C. at 292), affd. 353 F.3d 1181 (10th Cir. 2003).  Respondent's denial of such relief will constitute an abuse of discretion where it was arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  The question whether respondent's denial of relief under section 6015(f) was arbitrary, capricious, or without sound basis in fact is a question of fact. Cheshire v. Commissioner, 115 T.C. 183, 197-198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  In deciding whether respondent's denial of relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Revenue Procedure 2000-15 to be considered in determining whether an individual qualifies for relief under

section 6015(f).[12]  Section 4.01 of that revenue procedure lists
seven conditions (threshold conditions) which must be satisfied
before respondent will consider a request for relief under
section 6015(f).  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at
448.  Respondent concedes that petitioner meets the threshold
conditions.

Where, as here, the requesting spouse satisfies the thresh-
old conditions, section 4.01 of Revenue Procedure 2000-15 pro-
vides that a requesting spouse may be relieved under section
6015(f) of all or part of the liability in question if, taking
into account all the facts and circumstances, respondent deter-
mines that it would be inequitable to hold the requesting spouse
liable for such liability.

Where, as here, the requesting spouse satisfies the thresh-
old conditions, section 4.02 of Revenue Procedure 2000-15 sets
forth the circumstances under which respondent ordinarily will
grant relief to that spouse under section 6015(f) in a case, like
the instant case, where a liability is reported in a joint return

_____

[12]Revenue Procedure 2000-15 was superseded by Revenue Proce-
dure 2003-61, 2003-2 C.B. 296 (Revenue Procedure 2003-61).
Revenue Procedure 2003-61 is effective for requests for relief
filed on or after Nov. 1, 2003, and for requests for relief with
respect to which no preliminary determination was issued as of
Nov. 1, 2003.  In the present case, petitioner filed her respec-
tive Forms 8857 for the taxable years 1994, 1995, 1998, and 1999
on Jan. 22, 2001, and respondent's preliminary determination
letter was issued on May 23, 2002.  Therefore, Revenue Procedure
2000-15 is applicable in the present case.

but not paid.  As pertinent here, those circumstances, which

section 4.02 of Revenue Procedure 2000-15 and we refer to as

elements, are:

> (a) At the time relief is requested, the request-
> ing spouse is no longer married to * * * the
> nonrequesting spouse * * *;
>
> (b) At the time the return was signed, the re-
> questing spouse had no knowledge or reason to know that
> the tax would not be paid.  The requesting spouse must
> establish that it was reasonable for the requesting
> spouse to believe that the nonrequesting spouse would
> pay the reported liability. * * *; and
>
> (c) The requesting spouse will suffer economic
> hardship if relief is not granted.  For purposes of
> this section, the determination of whether a requesting
> spouse will suffer economic hardship will be made by
> the Commissioner or the Commissioner's delegate, and
> will be based on rules similar to those provided in §
> 301.6343-1(b)(4) of the Regulations on Procedure and
> Administration.  [Rev. Proc. 2000-15, sec. 4.02(1),
> 2000-1 C.B. at 448.]

(We shall hereinafter refer to the elements set forth in section

4.02(1)(a), (b), and (c) of Revenue Procedure 2000-15 as the

marital status element, the knowledge or reason to know element,

and the economic hardship element, respectively.)

Section 4.02(2) of Revenue Procedure 2000-15 provides that

relief granted under section 4.02(1) of that revenue procedure is

subject to the following limitations:

> (a) If the return is or has been adjusted to
> reflect an understatement of tax, relief will be avail-
> able only to the extent of the liability shown on the
> return prior to any such adjustment; and
>
> (b) Relief will only be available to the extent
> that the unpaid liability is allocable to the

nonrequesting spouse.

Turning to the three elements set forth in section 4.02(1) of Revenue Procedure 2000-15, the presence of which will ordinarily result in a grant of relief under section 6015(f), in the instant case, (1) petitioner concedes that the marital status element is not present, (2) the parties dispute whether the knowledge or reason to know element is present, and (3) the parties dispute whether the economic hardship element is present. In light of petitioner's concession that the marital status element is not present, petitioner does not qualify for relief under section 4.02(1) of Revenue Procedure 2000-15.

Respondent may nonetheless grant relief to petitioner under section 4.03 of Revenue Procedure 2000-15. That section provides a partial list of positive and negative factors which respondent is to take into account in considering whether to grant an individual relief under section 6015(f). No single factor is to be determinative in any particular case; all factors are to be considered and weighed appropriately; and the list of factors is not intended to be exhaustive. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

As pertinent here, section 4.03(1) of Revenue Procedure 2000-15 sets forth the following positive factors which weigh in favor of granting relief under section 6015(f):

> (a) <u>Marital status</u>. The requesting spouse is
> separated (whether legally separated or living apart)

or divorced from the nonrequesting spouse.

(b) <u>Economic hardship</u>.  The requesting spouse
would suffer economic hardship (within the meaning of
section 4.02(1)(c) of this revenue procedure) if relief
from the liability is not granted.

(c) <u>Abuse</u>.  The requesting spouse was abused by
the nonrequesting spouse, but such abuse did not amount
to duress.

(d) <u>No knowledge or reason to know</u>. In the case of
a liability that was properly reported but not paid,
the requesting spouse did not know and had no reason to
know that the liability would not be paid. * * *

(e) <u>Nonrequesting spouse's legal obligation</u>.  The
nonrequesting spouse has a legal obligation pursuant to
a divorce decree or agreement to pay the outstanding
liability.  This will not be a factor weighing in favor
of relief if the requesting spouse knew or had reason
to know, at the time the divorce decree or agreement
was entered into, that the nonrequesting spouse would
not pay the liability.

(f) <u>Attributable to nonrequesting spouse</u>.  The
liability for which relief is sought is solely attrib-
utable to the nonrequesting spouse.

As pertinent here, section 4.03(2) of Revenue Procedure

2000-15 sets forth the following negative factors which weigh

against granting relief under section 6015(f):

(a) <u>Attributable to the requesting spouse</u>.  The
unpaid liability * * * is attributable to the request-
ing spouse.

(b) <u>Knowledge or reason to know</u>.  A requesting
spouse knew or had reason to know * * * that the re-
ported liability would be unpaid at the time the return
was signed.  This is an extremely strong factor weigh-
ing against relief.  Nonetheless, when the factors in
favor of equitable relief are unusually strong, it may
be appropriate to grant relief under § 6015(f) in
limited situations where a requesting spouse knew or
had reason to know that the liability would not be paid

* * *.

(c) <u>Significant benefit</u>. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.

(d) <u>Lack of economic hardship</u>. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>. <u>The requesting spouse</u> has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

Respondent contends: (1) Petitioner signed the respective joint income tax returns that she and Mr. Butner filed for the taxable years 1994, 1995, 1998, and 1999 and that reported total amounts due of $10,474, $10,198, $8,935, and $12,059, respectively;[13] (2) petitioner received a significant benefit by filing such joint returns with Mr. Butner in that she would have had separate respective income tax liabilities on her income for the

---

[13]In their 1994 Form 1040, petitioner and Mr. Butner reported self-employment tax owed of $10,054, income tax withheld of $92, and a total amount owed of $10,474, which included an estimated tax penalty owed of $512. In their 1995 Form 1040, petitioner and Mr. Butner reported self-employment tax owed of $10,198 and a total amount owed of $10,198. In their 1998 Form 1040, petitioner and Mr. Butner reported self-employment tax owed of $8,935 and a total amount owed of $8,935. In their 1999 Form 1040, petitioner and Mr. Butner reported self-employment tax owed of $11,582 and a total amount owed of $12,059, which included an estimated tax penalty of $477.

taxable years 1994, 1995, 1998, and 1999 of $330, $238, $1,466, and $1,189, if she had not filed such joint returns and availed herself of the net operating loss carryovers associated with Mr. Butner's business enterprises; (3) petitioner also received a significant benefit "beyond normal support, from the tax liabilities that went unpaid in that money which her husband could have used to pay estimated taxes to reduce or satisfy his self-employment tax liability was paid to petitioner as secretarial wages"; (4) petitioner would not suffer economic hardship if the Court were not to grant relief from the liability for each of the taxable years at issue; (5) petitioner knew or had reason to know when she signed and filed each of the joint income tax returns in question that the liability reported in each such return would not be paid due to her knowledge of previous judgments and assessments against Mr. Butner and herself; and (6) petitioner failed to comply with the income tax laws for the taxable years following the taxable years for which relief is sought.  According to respondent, the foregoing factors weigh against granting relief under section 6015(f) to petitioner.

We now address the application of each of the factors set forth in Revenue Procedure 2000-15 that weigh in favor of or against granting petitioner relief under section 6015(f).

Marital Status

Respondent contends that this factor is neutral.  We agree.

Petitioner and Mr. Butner were married in 1984 and remained married as of the time of trial. In addition, petitioner and Mr. Butner resided together during the 12 months preceding petitioner's filing Forms 8857 with respect to the respective taxable years at issue, in which she requested relief under section 6015 for those years.

Economic Hardship

Respondent contends that petitioner will not suffer economic hardship if relief were denied. In determining whether a requesting spouse will suffer economic hardship, section 4.02(1)(c) of Revenue Procedure 2000-15 requires reliance on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. Under section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.,[14] economic hardship exists if collection of the tax lia-

---

[14]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides in pertinent part:

> (ii) Information from taxpayer.--In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--
>
> (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
>
> (B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered
>
> (continued...)

bility will cause a taxpayer to be unable to pay such taxpayer's reasonable basic living expenses.

The parties stipulated that petitioner has not verified that she would suffer an economic hardship if relief from joint and several liability for each of the taxable years 1994, 1995, 1998, and 1999 were not granted.  Furthermore, it appears from the record that petitioner has assets such that she would not experience economic hardship if required to pay some or all of the liabilities at issue.  Petitioner has not entered into evidence any documentary or testimonial evidence to contradict respondent's contention that she will not suffer economic hardship if relief were denied.  We find that petitioner will not suffer economic hardship if relief under section 6015(f) were not granted.  This factor weighs against granting relief.

-----

[14](...continued)
payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

   (C) The cost of living in the geographic area in which the taxpayer resides;

   (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

   (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

   (F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

Abuse

Respondent contends that this factor is neutral.  We agree. At no time was petitioner abused by Mr. Butner.

Knowledge or Reason To Know

Petitioner contends that she did not know and had no reason to know when she signed the respective joint income tax returns for the taxable years 1994, 1995, 1998, and 1999 that the respective liabilities reported in those returns would not be paid. The record does not establish, and petitioner does not contend, that she signed those returns under duress, and not voluntarily. Petitioner testified on cross-examination that she believed that the joint income tax return that she and Mr. Butner filed for each of the taxable years at issue was correct when she signed each such return.[15]

Moreover, petitioner did not answer the questionnaire that respondent's representative asked her to complete as it pertained to whether she was aware of the liability reported in the joint income tax return that she and Mr. Butner filed for each of the years at issue and whether she thought that the liability shown

---

[15]Even if petitioner signed each of the returns in question without reviewing it, petitioner is charged with constructive knowledge of the tax shown due in each such return.  Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994), affg. T.C. Memo. 1993-252; see also Castle v. Commissioner, T.C. Memo. 2002-142; Cohen v. Commissioner, T.C. Memo. 1987-537 (the provisions providing relief from joint and several liability are "designed to protect the innocent, not the intentionally ignorant").

due in each such return would be paid at the time of such filing. Nonetheless, in response to the very next question in that questionnaire, which sought a description of any plan that she and Mr. Butner had for paying any liability that was shown due in the joint income tax return for each of the years at issue and that was not paid at the time of filing each such return, petitioner admitted that there was no plan for paying any such liability.

Furthermore, in 1996, before petitioner and Mr. Butner filed a joint income tax return for any of the taxable years 1994, 1995, 1998, and 1999, the Bankruptcy Court entered judgments in excess of $3 million against them. At the time of the trial in this case, those judgments had not been satisfied. Petitioner was aware that those judgments had been entered against Mr. Butner and herself and had not been satisfied when she signed (1) on January 20, 1998, the respective joint income tax returns for the taxable years 1994 and 1995 and (2) on October 14, 2000, the respective joint income tax returns for the taxable years 1998 and 1999.

In addition, although petitioner testified that she had no reason to believe at the time she signed the joint income tax return for each of the years at issue that the tax shown due in each such return would not be paid and that she thought her husband "was going to take care of that", on April 24, 1995, a

trust fund recovery penalty of $276,226.86 was assessed against Mr. Butner.  Moreover, on October 25, 1999, a notice of Federal tax lien was filed against Mr. Butner with respect to that liability.  On the same date, notices of Federal tax lien were filed against petitioner and Mr. Butner for their respective liabilities for the taxable years 1994 and 1995.  Petitioner was aware of those notices on October 14, 2000, when she signed the respective joint income tax returns for the taxable years 1998 and 1999.  Based on that knowledge, petitioner had reason to know that the tax liability shown in each of those returns would not be paid.[16]

We find that petitioner had reason to know (1) on January 20, 1998, when she signed the respective joint income tax returns for the taxable years 1994 and 1995 and (2) on October 14, 2000, when she signed the respective joint income tax returns for the taxable years 1998 and 1999 that the respective liabilities shown in those returns would not be paid.  This factor weighs against granting relief.

Nonrequesting Spouse's Legal Obligation

Respondent contends that this factor is neutral.  We agree. Petitioner and Mr. Butner were still married at the time of trial.  The record contains no evidence of any relevant agreement with respect to the liabilities at issue.

---

[16]See Collier v. Commissioner, T.C. Memo. 2002-144.

Attributable to Nonrequesting Spouse

The respective liabilities for the taxable years 1994, 1995, 1998, and 1999 are self-employment tax liabilities that are solely attributable to Mr. Butner.  This factor favors granting relief.

Significant Benefit

Respondent contends that petitioner received a significant benefit,

>       beyond normal support, from the tax liabilities that
>       went unpaid in that money which her husband could have
>       used to pay estimated taxes to reduce or satisfy his
>       self-employment tax liability was paid to petitioner as
>       secretarial wages.  However, petitioner had no secre-
>       tarial training and reported her occupation as "HOME-
>       MAKER" on the joint returns which she and her husband
>       filed for these years. * * *

Respondent further contends that petitioner received a significant benefit by filing joint income tax returns with Mr. Butner for the respective taxable years at issue because she availed herself of the net operating loss carryovers arising from his business enterprises and thereby eliminated the income tax liabilities that would have been due from her had she filed separately.

During the years at issue, Mr. Butner paid wages to petitioner for performing secretarial services.  He paid her $2,600 in 1994, $11,060 in 1995, $16,952 in 1998, and $17,278 in 1999. During cross-examination, petitioner admitted that she had no secretarial training.  During the years 1994, 1995, 1998, and

1999, Mr. Butner, who was a sole practitioner, employed four or five people who were not lawyers in his law practice. Furthermore, Mr. Butner did not withhold any income tax from the wages that he paid to petitioner during the taxable years at issue. Respondent contends that those circumstances establish the inference that

> petitioner's "wages" were nothing more than her spending allowance, rather than compensation for secretarial services. The income tax returns for 1994, 1995, 1998 and 1999 show petitioner's occupation as "HOMEMAKER." * * * No income taxes were withheld from petitioner's wages. * * * This gave petitioner money to spend. Petitioner's spending allowance in the form of tax-free secretarial "wages" constitutes a significant benefit beyond normal support. This money could have been used by Mr. Butner to make estimated tax payments, which would have decreased the amount of self-employment taxes owed * * *.

While the factual circumstances surrounding Mr. Butner's payment of wages to petitioner during the years at issue are suspicious, we are not persuaded that petitioner received a significant benefit from filing joint income tax returns with Mr. Butner for the taxable years 1994, 1995, 1998, and 1999, respectively. Under Revenue Procedure 2000-15, this factor is neutral. However, based on cases decided under former section 6013(e), we consider the lack of significant benefit by the taxpayer seeking relief from joint and several liability as a factor that favors granting relief under section 6015(f).[17]

---

[17]Ferrarese v. Commissioner, T.C. Memo. 2002-249.

Compliance With Federal Tax Laws

On December 31, 2001, petitioner and Mr. Butner filed late a joint income tax return for the taxable year 2000 that showed a tax liability of $7,807 that was unpaid. In addition, during 2000, petitioner received wages of $16,952 from Mr. Butner for secretarial work, from which no income tax was withheld. Furthermore, on January 6, 2003, petitioner filed late an income tax return for the taxable year 2001 that showed a tax liability of $141, which she paid at that time.

Petitioner failed to comply with the income tax laws for certain taxable years following the taxable years to which her request for relief relates. This factor weighs against granting relief.

In addition, petitioner has not established any other factors not set forth in Revenue Procedure 2000-15 that favor granting relief to her.

In conclusion, under the facts and circumstances in the instant case, we hold that respondent did not abuse respondent's discretion in denying equitable relief under section 6015(f) to petitioner.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered

for respondent.