RAYMOND L. DICKEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickey v. Commissioner
Docket No. 18873-81.
United States Tax Court
T.C. Memo 1985-478; 1985 Tax Ct. Memo LEXIS 154; 50 T.C.M. (CCH) 1041; T.C.M. (RIA) 85478; September 12, 1985. Thomas R. Buckner, for the petitioner. Cynthia M. Odle-Schlechty, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income taxes for the taxable years 1974, 1975, 1976, and 1977 and additions to tax for fraud *155 under section 6653(b)[1] as follows: Addition to Tax
Taxable Year
Deficiency
Section 6653(b)
1974
$2,778.51
$1,389.25
1975
7,996.30
3,998.15
1976
13,503.00
6,751.50
1977
8,645.59
4,322.52
After concessions, the issues for decision are: (1) Whether petitioner is entitled to relied under section 6013(e) as an innocent spouse, and (2) whether petitioner is liable for additions to tax for fraud under section 6653(b) as a result of failure to report income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated by reference. Subparagraphs (a) through (n) of paragraph 2, subparagraphs (a) through (j) of paragraph 3, and subparagraph (a) and (b) of paragraph 4 of respondent's answer have also been deemed admitted under Rule 37(c). Raymond L. Dickey (petitioner) was a resident of Arlington, Tennessee, at the time the petition in this case *156 was filed. Petitioner filed joint Federal income tax returns with his wife, Gladys Evelyn Dickey (Gladys), for the taxable years 1974, 1975, 1976, and 1977, with the Internal Revenue Service Center in Memphis, Tennessee. The petition in this case was jointly filed by petitioner and his wife. The case of Gladys Evelyn Dickey was subsequently severed from the case of her husband, and an agreed decision, docket No. 42306-84, was entered against her for the full amounts of the deficiencies in income taxes and additions to tax under section 6653(b) for the taxable years 1974 through 1977. Petitioner was born in 1928. He attended school through the tenth grade, and served 18 months in the U.S. Navy. After leaving the Navy, he received a graduate equivalency diploma. After jobs with Tennessee Building Company and American Finishing Company, petitioner began working for the fire department in Temphis, Tennessee, where he worked until retirement, as a lieutenant, in October of 1977. His retirement was a direct result of visual disability. Petitioner began having difficulty with his eyes in 1964. The problem has been diagnosed as irreversible histoplasmic corneal retinitis. During *157 the taxable years at issue, his eyesight was no better than 20/200 in either eye. During the taxable years 1974 through 1977, he had vision from the corners of his eyes and could read some things with glasses. He can still watch TV with a magnifying glass and write his name if a line is pointed out. Until his retirement, he was able to perform his duties as a lieutenant in the fire department and remained responsible for supervising men, making recommendations about promotions, seeing that records were kept about the men on duty, and fulfilling the normal duties of his position. The disease that affected his eyes in no way impaired his mental abilities, nor his ability to make financial decisions. Petitioner married Gladys on May 2, 1948. They remained married for 35 years, and have four children. At the time of trial, the ages of their children Sue, Larry, Debra, and Peggy were 35, 33, 31, and 29, respectively. In 1968 and 1969, Gladys stole approximately $18,000 of merchandise from the Sears, Roebuck & Co. store where she worked. Petitioner, on occasion, helped pick up the stolen merchandise at the Sears store and delivered it to purchasers. Most of the merchandise was *158 sold to firemen. Gladys and petitioner filed joint Federal income tax returns for the taxable years 1968 and 1969. The returns were audited by the Internal Revenue Service, and additional tax was assessed based on the unreported income from sales of the stolen merchandise. Throughout the taxable years at issue, the joint Federal income tax refunds of petitioner and Gladys were applied to the tax assessed for the taxable years 1968 and 1969. Petitioner and Gladys also set up schedules from time to time for installment payments to pay the assessed taxes and made payments in the amounts of $735, $798, and $164 during the taxable years 1974, 1976, and 1977, respectively. Petitioner participated in the audit of the returns, including meeting with the Internal Revenue Service agent, and discussed the fact that he and Gladys owed additional tax because of the sales of merchandise which Gladys had stolen from Sears. Gladys was incarcerated in the women's penitentiary at Nashville, Tennessee from 1970 to 1972 for the thefts from Sears. When she was released from prison she returned home to petitioner in Memphis, Tennessee. Gladys then became employed as a bookkeeper and secretary *159 at Memphis Communications Corporation in Memphis, Tennessee. During the taxable years 1974 through 1977, Gladys embezzled $81,273.16 in cash from her employer as follows: $7,444.53 in 1974, $18,886.86 in 1975, $32,229.78 in 1976, and $22,711.99 in 1977. None of these sums were reported on the joint Federal income tax returns filed by petitioner and Gladys for the taxable years 1974 through 1977. The only amounts reported as income earned by Gladys during the taxable years 1974, 1975, 1976, and 1977 were her earnings from Memphis Communications Corporation in the amounts of $5,261, $5,736, $6,436, and $3,406, respectively. Because of the amounts spent by Gladys, as detailed below, petitioner and the children became concerned that Gladys might again be stealing, and they questioned her at different times. She claimed to have received extra money for her work. Petitioner did not question her further even after he saw the Forms W-2 from her employer for the taxable years at issue. Petitioner's salary, withholding for Federal income tax, and withholding for hospitalization insurance for the taxable years 1974 through 1977 are summarized below. The amounts set forth for the taxable *160 year 1977 include wages earned by petitioner as manager of a campground after his retirement from the fire department. Taxable
Income Tax
Hospitalization
Year
Salary
Withheld
Insurance Withheld
1974
$13,982.30
$2,244.89
$480.00
1975
14,886.00
unknown [2]
480.00
1976
15,833.00
2,340.58
480.00
1977
18,338.43
3,204.47
480.00
Installment payments on loans with the credit union were also withheld from petitioner's pay on a biweekly basis, in amounts ranging from $19 to $21 on one loan, $36 to $38 on a second loan, and $60 to $63 on a third loan. The total amount withheld to repay loans during the taxable year 1977 before the loans were paid by petitioner's credit life insurance was $2,553.37. During all of 1974 *161 and 1975, petitioner and Gladys lived in a Memphis apartment, paying a monthly rental of $190. In early 1975, petitioner and Gladys moved into a house in Memphis, paying a monthly rental of $235 to $240. In early 1976, petitioner and Gladys moved to another house in Memphis that rented for $300 to $315 per month. On or about the first of November, 1977, they moved to a mobile home in Earle, Arkansas, that was either furnished by their employer or rented by petitioner and Gladys. In every place that they lived during the taxable years at issue, petitioner and Gladys paid utilities in addition to rent. During the taxable years at issue, petitioner and Gladys maintained joint checking accounts, but had no savings accounts, stocks, bonds or securities. Gladys did not have any separate accounts of her own. Petitioner had his own account at the City of Memphis Credit Union, which he managed without assistance. The balance in the account at the credit union accumulated by the withholding of $10 each pay period from petitioner's paycheck from the fire department. Peggy, the daughter of petitioner and Gladys, lived with then for a period of time ending in 1975. Their son Larry also *162 lived with them during the taxable years at issue. Although Larry was employed, he earned little more than the minimum wage. During the taxable years at issue, both children had drug problems, and Gladys spent approximately $3,000 on drug rehabilitation and medical programs for them. Gladys also paid for eye care for Peggy and spent $100 per day attempting to find Peggy after she left home. Petitioner knew that the two children were unemployed or making very little money, and he also knew that they were undergoing treatment. Although petitioner did not know about all of the specific payments Gladys made for the benefit of their children, he knew that she was paying for many of their expenses. During 1975, petitioner and Gladys paid $789 on a note that they had guaranteed when the primary debtor had defaulted. Petitioner and Gladys owned a series of vehicles during the taxable years at issue. During 1974, they owned a 1965 Chevrolet. During 1974 and 1975, they owned a 1973 Pontiac, and in January of 1976 they bought a 1975 Chrysler Cordoba. Petitioner and Gladys together selected the Cordoba. At about the time the Cordoba was purchased, the Pontiac was sold for an amount *163 between $700 and $2,900. The Cordoba's purchase price of $3,000 was financed through petitioner's credit union. In 1975, petitioner and Gladys bought a 1972 Winnebago recreational vehicle. The purchase price of between $7,000 and $8,000 was financed at petitioner's credit union, with monthly payments deducted from his paycheck. The loans on both the Cordoba and the Winnebago were paid by petitioner's credit life insurance when petitioner retired on disability in 1977. The Winnebago was used mostly for petitioner's fishing trips, which he took once or twice a month during the months from April through July. Other family members frequently joined him. Petitioner often went on overnight trips to Heber Springs, Arkansas, which was approximately a six hour drive from Memphis. He stayed at a campground in the area. Petitioner spent between $15 and $25 on each of the fishing trips. In 1976, petitioner and Gladys also bought a Bass fishing boat, which they used primarily on the fishing trips. The purchase price of $1,000 was paid in cash. During the taxable years 1974 through 1977, petitioner and Gladys drove to California five times to visit a friend, taking one child with them *164 on each of the last four trips. Each of the trips cost between $600 and $700. In approximately September of 1977, petitioner and Gladys went on a Caribbean cruise with some other couples. By that time, petitioner was aware of Gladys' embezzlement from Memphis Communications Corporation so he allowed his brother-in-law and sister-in-law to pay for the cost of the cruise. He repaid his relatives when he received his sick leave pay upon retirement in October, 1977. Petitioner and Gladys spent approximately $400 to $500 for incidental expenses on the trip. During the taxable years at issue, petitioner and Gladys often played bingo. They susally went together and both played. The Dickeys usually went to a Jewish Synagogue, and occasionally to a Catholic church. They would purchase packets of three cards for $2 each, and play to win for cash. During 1974, petitioner won $1,000 on one game of bingo. Petitioner gave his social security number when he claimed the prize, and knew that the winnings were reportable as income. He received a Form 1099-MISC for this amount, but failed to report his winnings as income on the Federal tax return for the taxable year 1974. Some of the embezzled *165 funds were spent during the taxable years at issue on betting tickets at the dog races at West Memphis, Arkansas operated by Southland Racing Corporation. In the years 1975 through 1977, the racing season at this track ran from around May to October. Paramutual betting was available. During 1975, Southland Racing Corporation prepared Forms 1099 as required by Federal law for winnings of a certain size. These Forms 1099 were prepared and given to the persons holding winning tickets at the time the tickets were cashed in. Between 1975 and 1977, the Federal law changed, and Southland Racing Corporation began to use Forms W-2G. During 1977, a person cashing in a winning ticket for a large payoff was required to fill out a Form 5754 at the window. The Form W-2G was later typed from this Form 5754 and mailed to the winner during the income tax filing season for that year, usually in January or February. During the taxable years 1974 through 1977, petitioner and Gladys went to the dog track frequently. Petitioner and Gladys were members of a private club at the track called the Kennel Club for an annual fee of $100. Members could have dinner and drinks at the club and could place *166 their bets at special windows provided for that purpose. The Dickeys typically would arrive 30 minutes before the first race and stay until the races were over. When petitioner could not go with Gladys, one of their children would go with her. The Dickeys generally sat at a table with a group. The cost of each evening, exclusive of bets, but including dinner, drinks, and parking was $10 to $15 per night. Gladys was a compulsive bettor, betting approximately $50 per night throughout the taxable years at issue. Those sitting at the table with her, including petitioner, knew that she would often bet several ways on one race. She often discussed her bets at the table, and would make it quite well-known when she won. On August 19, 1975, Gladys won $1,689.40 on a $4 bet on the last race of the evening. A Form 1099-MISC was issued for this amount. Gladys' winnings were not reported on the Federal tax return for the taxable year 1975. Both petitioner and Gladys bet, but placed their bets separately. On a typical night, petitioner would gamble up to $6, and occasionally won. Petitioner won $643.20 on June 6, 1977. When petitioner picked up his winnings, he signed a Form 5754 provided *167 to him by the track, and later received a Form W-2G for this amount. Petitioner's winnings were not reported on the Federal tax return for the taxable year 1977. During the years at issue, neither petitioner nor Gladys received any inheritances, large cash gifts, or loans other than those already discussed. Gladys assembled most of the necessary information for the preparation of the Federal income tax returns for the taxable years at issue. Petitioner gave her his Forms W-2, 1099-MISC, and W-2G, but did not question her about the inclusion of all income earned, nor even discuss the manner in which the returns were being prepared. Petitioner was familiar with the requirements for reporting income on Federal income tax returns for the taxable years at issue, but did not review any of the returns before they were filed. He signed the returns for the taxable years 1974 and 1975. His name was signed, probably by Gladys with his permission, on the returns for the taxable years 1976 and 1977. Gladys told petitioner of her embezzlement from Memphis Communications Corporation in early 1977, but petitioner continued to let Gladys have primary responsibility for the preparation and *168 review of their Federal tax returns. By June of 1978, special agents of the Criminal Investigation Division of the Internal Revenue Service were investigating the failure by petitioner and Gladys to report their income. Petitioner knew of the investigation by late 1979.Gladys was convicted of income tax evasion for the taxable years 1974 through 1977. In 1980, Gladys was incarcerated at the Federal Correctional Institute in Lexington, Kentucky. After a subsequent stay at a half-way house in Memphis, Gladys was released in August of 1981, and went home to petitioner. Petitioner continued to let Gladys handle many of his financial matters until they were separated in August of 1983. Petitioner and Gladys were subsequently divorced. On April 15, 1981, the Commissioner issued a statutory notice of deficiency to petitioner and Gladys for the taxable years 1974, 1975, 1976, and 1977. The Commissioner determined that the embezzled funds and bingo and gambling winnings had not been reported; that medical and dental expenses had not been substantiated for the taxable years 1974, 1975, and 1976; that deductions for taxes paid and interest expense for the taxable years 1974, 1975, and *169 1976 were incorrect; that the short term capital loss claimed for the taxable year 1975 was not allowable; and that the bad debt deduction in the amount of $789 for the taxable year 1975 was not allowable. Itemized deductions were also disallowed for the taxable years 1974 and 1976 as the standard deduction was more beneficial to petitioners. The net results of the Commissioner's determination were increases in taxable income for each of the taxable years 1974, 1975, 1976, and 1977 in the amounts of $9,432.53, $22,950.42, $33,394.78, and $23,355.19, respectively. OPINION The Commissioner's determination in his statutory notice of deficiency is presumptively correct, and petitioner has the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). After concessions, the issue for decision are: (1) Whether Raymond L. Dickey is an innocent spouse under section 6013(e), [3] which provides that in certain circumstances a spouse who has filed a joint Federal income tax return will be relieved from liability to the extent that such *170 liability results from a substantial understatement of tax attributable to grossly erroneous items of one spouse, and (2) whether Raymond L. Dickey is liable for the addition to tax under section 6653(b) for fraud. In order for petitioner to qualify for the relief provided by the statute, the following conditions specified in section 6013(e) must be satisfied: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary, if (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial *171 understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. The preliminary prerequisite for relief under section 6013(e)(1)(A) that petitioner and Gladys filed joint tax returns for the taxable years 1974, 1975, 1976, and 1977 is satisfied. The second requirement is that there be a substantial understatement of tax attributable to grossly erroneous items of one spouse. "Grossly erroneous items" in section 6013(e)(1)(B) includes any item of gross income attributable to such spouse which is omitted from gross income. Sec. 6013(e)(2)(A). "Substantial understatement" in section 6013(e)(1)(B), (C), and (D) means any understatement of tax (as defined in section 6661(b)(2)(A)) which exceeds $500. Sec. 6013(e)(3). Petitioner *172 has satisfied the second requirement for relief under section 6013(e)(1)(B) as to the embezzlement income and the $1,689.40 won by Gladys during the taxable year 1975. All four statutory requirements, however, must be satisfied and it is the remaining two requirements of sections 6013(e)(1)(C), and (D) that respondent contends that petitioner has failed to meet. Estate of Jackson v. Commissioner,72 T.C. 356, 360 (1979); Adams v. Commissioner,60 T.C. 300 (1973). Petitioner has the burden of proving that all requirements for relief from tax as an innocent spouse are satisfied. Rule 142(a); Ratana v. Commissioner,662 F.2d 220, 224 (4th Cir. 1981); Sonnenborn v. Commissioner,57 T.C. 373, 380-381 (1971). Section 6013(e)(1)(C) requires petitioner to establish that he did not know or have reason to know of the understatement of tax when he signed the return. In order to meet this burden, he must prove (1) that he did not have actual knowledge of the understatement of tax, and (2) that the omission was not of such character *173 as to cause a reasonably prudent person possessed of petitioner's experience and temperament to have known of the omission. These matters of proof are questions of fact. Sanders v. United States,509 F.2d 162, 165, 167 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 697-699 (1972). Section 6013(e) is designed to protect the innocent, not the intentionally ignorant. Petitioner attempts to meet his burden of proof as to knowledge of the omission under section 6013(e)(1)(C) by the mere allegation that he did not review the tax returns for the taxable years at issue before the returns were filed. We find that, due to petitioner's failure to review the returns, petitioner did not have actual knowledge of the omissions from income during the taxable years at issue. Knowledge of the omission and consequent understatement of tax may be imputed to the spouse, however, if a reasonably prudent person possessed of his experience and temperament would have known of the omission. This Court *174 has found at least three factors significant in deciding whether a spouse had reason to know of omissions from gross income: (1) unusual or lavish expenditures, Mysse v. Commissioner,supra at 699; (2) participation in business affairs or bookkeeping, Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); and (3) the guilty spouse's refusal to be forthright concerning the couple's income, Adams v. Commissioner,supra. Petitioner was aware of both the tax difficulties caused by his wife's prior theft, and the substantial sums being spent by Gladys on the children, on betting, and on the general expenses of the household. Petitioner is also a man who held a responsible position with the fire department despite his apparent handicap, and who participated generally in the family's financial decisions. Finally, although questions were raised as to the possibility that Gladys was again stealing, her answers were inadequate and readily verifiable as false. We find it unbelievable, under the circumstances before us, that a man of petitioner's background should have totally failed to review *175 any of the four tax returns for the potential of omitted income before the returns were filed. Whether or not petitioner actually knew of the understatement of tax caused by the omissions of income, he most certainly should have known of the omissions and has, therefore, failed to meet the third requirement under section 6013(e). Sanders v. United States,supra.
As petitioner has failed to satisfy the third requirement under section 6013(e), we need not determine whether, taking all of the facts into consideration, it would be inequitable to hold him liable for the deficiency attributable to the omissions of the embezzled income. Petitioner is not, therefore, entitled to relief from liability for the deficiencies in tax resulting from the omission of Gladys' embezzlement and betting income. Sec. 6013(e). Petitioner has not contested his liability for the portion of the deficiency attributable to his failure to report bingo winnings in the amount of $1,000 for the taxable year 1974, and his failure to report gambling winnings in the amount of $643.20 for the taxable year 1977. Petitioner has not contested the fact that these amounts were not reported, *176 and the Commissioner's determination as to increased income tax liability resulting from the omission of these amounts is sustained. Rule 142(a). The second issue for decision is whether petitioner is liable for the additions to tax for fraud determined by the Commissioner for each of the taxable years at issue under section 6653(b). The burden of proving fraud is on respondent, and he must do so by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes, and that there is an underpayment of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112 (1956). When fraud is determined, for more than one taxable year, as in the instant case, respondent *177 must show that some part of the underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld. Professional Services v. Commissioner,79 T.C. 888, 930 (1982); Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner,supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner,supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States,317 U.S. 492 (1943); *178 Gajewski v. Commissioner,supra at 200; Stone v. Commissioner,supra at 223-224. In two of the taxable years before us, petitioner's income from gambling or bingo winnings was omitted despite his receipt of forms from the payors. Petitioner was aware of his wife's past propensity for theft and her past failures to report income. Petitioner cannot evade his duty to file correct and accurate returns by unjustified reliance upon his wife's preparation of the returns. Petitioner's failure to review the returns for the reporting of his own income and the circumstances of his wife's history is indicative of petitioner's fraudulent intent. We find for respondent as to the addition to tax under section 6653(b). To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all Rule references are to this Court's Rules of Practice and Procedure.↩
2. The Forms W-2 for the taxable year 1975 are not in the record before us. Petitioner's salary for the taxable year 1975 has been computed by subtracting the amount set forth above as Gladys' wages from the wages, salaries and tips reported on the joint return. The amounts withheld are listed on the return in aggregate form, however, and no amount can be specifically stated to have been withheld from petitioner's salary.↩
3. Sec. 6013(e)↩ was amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801, with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and of 1939 applies. See H. Rept. 98-432, Pt. 2 (Mar. 5, 1984) 1501, 1503.