# United States Tax Court

T.C. Memo. 2022-78

JENNIFER A. SOLER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18639-19.                                       Filed July 18, 2022.

————

*Michael A. Raiken* and *E. Martin Davidoff*, for petitioner.

*Brian E. Salisbury*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, *Judge*: This case arises from petitioner's request for relief from joint and several liability under section 6015 with respect to tax years 2012, 2013, 2014, and 2015. The issue for decision is whether petitioner is entitled to relief under section 6015(b) or (f).[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and facts drawn from the stipulated exhibits, which include the administrative record in this case, are incorporated herein by this reference. Petitioner, Jennifer A. Soler, resided in New Jersey when she petitioned this Court.

_____

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]   Mrs. Soler is married to and resides with her husband, Carlos Soler, the nonrequesting spouse.  Mr. and Mrs. Soler have been married for over 25 years, have two children together, and have never been legally separated.

Mrs. Soler is the primary income earner for her household.  At the time of trial, Mrs. Soler was employed as a manager and earned an annual salary of $160,000.  She has a two-year associate's degree in fashion design and worked as a clothing designer during the 2012 through 2015 tax years.  Mr. Soler has a bachelor's degree in accounting and was primarily a stay-at-home father during the 2012 through 2015 tax years.  Mr. Soler also operated a consulting business during tax years 2012, 2013, and 2014 and a real estate business during tax years 2013 and 2014.

I.   *Tax returns and examination*

The Solers timely and jointly filed Form 1040, U.S. Individual Income Tax Return, for each year at issue.  The returns were prepared by Mr. Soler and were signed by both Mr. and Mrs. Soler.

Mr. Soler reported the income and expenses of his consulting and real estate businesses on separate Schedules C, Profit or Loss From Business.  For tax year 2012 the consulting Schedule C reported gross receipts of $16,340 and a net loss of $8,109.  For tax year 2013 the consulting Schedule C reported no gross receipts and a net loss of $5,103, and the real estate Schedule C reported no gross receipts and a net loss of $7,420.  For tax year 2014 the combined Schedules C reported no gross receipts, but Mr. Soler reported a net Schedule C profit of $1,762 on his Schedule SE, Self-Employment Tax.

On April 29, 2015, the Internal Revenue Service (IRS) informed Mr. and Mrs. Soler via letter that their 2012 income tax return was being examined.  The letter identified issues with the Schedule C gross receipts and with various deductions for reported expenses.  An IRS Revenue Agent (RA) scheduled an initial interview with Mr. Soler on May 14, 2015.  When the RA arrived at the Solers' apartment for the interview, Mrs. Soler answered the door, told the agent that Mr. Soler was ill, and requested that the meeting be rescheduled.  On May 20, 2015, the RA and Mr. Soler rescheduled the initial interview for May 29, 2015.  During that conversation, Mr. Soler asked whether Mrs. Soler was required to be present at the interview, and the RA told Mr. Soler that she was welcome but not obligated to be there.

[*3]    On June 10, 2015, the RA mailed separate letters to Mr. and Mrs. Soler informing them that their 2013 income tax return was also being examined. However, the letter addressed to Mr. Soler was later returned as undeliverable. On August 12, 2015, the RA opened an examination of the Solers' 2014 return.

On November 13, 2015, respondent mailed separate letters and Forms 4549–A, Income Tax Examination Changes, to Mr. and Mrs. Soler for the 2012, 2013, and 2014 tax years. Respondent later issued a notice of deficiency to Mr. and Mrs. Soler for tax years 2012, 2013, and 2014 that determined a deficiency in tax and a section 6662 accuracy-related penalty for each year. The Solers did not dispute the notice of deficiency by filing a petition with this Court, and respondent assessed the proposed deficiencies and penalties.

The IRS performed an income-matching examination of the Solers' 2015 tax return and determined that the 2015 return failed to include in income distributions from Mr. and Mrs. Soler's qualified retirement accounts of $6,000 and $23,000, respectively. Respondent issued a notice of deficiency to Mr. and Mrs. Soler for the 2015 tax year determining a deficiency in tax and a section 6662 accuracy-related penalty. The Solers did not petition the Court with respect to this notice, and respondent assessed the proposed deficiency and penalty.

II.    *Request for relief*

On February 20, 2018, respondent received a timely Form 8857, Request for Innocent Spouse Relief, from Mrs. Soler, requesting relief from joint and several liability for tax years 2012, 2013, 2014, and 2015 pursuant to section 6015(b), (c), and (f). In her request for relief Mrs. Soler claimed that she was unaware of any income tax liabilities until the IRS began levying against her wages. Mrs. Soler also claimed that she believed Mr. Soler was unemployed during the years at issue and had no income.[2]

In her request for relief, Mrs. Soler stated that neither she nor any member of her family was a victim of spousal abuse or domestic violence during any of the years at issue and that she was not suffering any physical or mental health problems when the returns were filed or when she filed her request for relief. Mrs. Soler also stated that she and

_____

[2] Mrs. Soler also stated that, as a result of the levy, she would begin filing separately from Mr. Soler, but she continued to file joint returns with Mr. Soler for tax years 2016, 2017, 2018, 2019, and 2020.

[*4] Mr. Soler were experiencing ongoing financial stress and were in the midst of a bankruptcy proceeding during the years at issue.[3]

On May 25, 2018, respondent issued a preliminary determination to Mrs. Soler denying her request for section 6015 relief for all years included in the request. On June 19, 2018, Mrs. Soler submitted Form 12509, Innocent Spouse Statement of Disagreement, appealing respondent's preliminary determination, and her case was assigned to the IRS Office of Appeals (Appeals).[4] Mrs. Soler appended a letter to her Form 12509, in which she disagreed with three of the preliminary determination's conclusions: (1) that she had knowledge or reason to know of the items that caused the understatements of tax; (2) that she would not experience financial hardship if relief were denied; and (3) that it would not be unfair to hold her liable for the unpaid liabilities.

In her letter to Appeals, Mrs. Soler acknowledged that she was aware that her income was not enough to pay all of the household expenses during the years at issue. However, she believed the gap between her income and the family's expenses was being bridged by gifts from Mr. Soler's mother. Mrs. Soler argued that she relied on Mr. Soler to handle all of the family finances and tax returns, and she did not have any reason to believe that there was an issue until the IRS began levying against her wages. Mrs. Soler submitted some household bills and bank statements in support of her contention that she would experience financial hardship if relief was not granted. However, the bank statements, which are for Mrs. Soler's personal checking account from October 29, 2014, through December 29, 2015, showed that Mrs. Soler regularly paid household bills from the account.

Appeals issued a final notice of determination to Mrs. Soler on July 10, 2019, denying her request for relief. Appeals determined that Mrs. Soler did not qualify for relief under section 6015(b) because she had knowledge or reason to know of the understatements of tax when she signed the returns. Appeals further determined that Mrs. Soler did not qualify for relief under section 6015(c) because she did not meet the

---

[3] Mr. and Mrs. Soler filed a voluntary petition for chapter 13 bankruptcy on July 20, 2011. The U.S. Bankruptcy Court of New Jersey confirmed the bankruptcy plan on October 7, 2011, and entered a discharge order approximately five years later on October 24, 2016.

[4] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

[*5] marital status requirement. Lastly, Appeals determined that, although Mrs. Soler met the threshold requirements for relief under section 6015(f), no relief would be granted because Mrs. Soler did not meet the requirements for streamlined relief, she had knowledge or reason to know of the understatements of tax when the returns were filed, and she did not demonstrate that she would experience economic hardship if relief was not granted.

Mrs. Soler timely petitioned this Court on October 15, 2019. We held trial on October 25, 2021.

OPINION

Generally, married taxpayers who elect to file a joint federal income tax return are jointly and severally liable for the entire tax liability due on that return. § 6013(d)(3); *Butler v. Commissioner*, 114 T.C. 276, 282 (2000). In certain circumstances, however, section 6015 allows a taxpayer who filed a joint return to qualify for relief from joint and several liability.

Section 6015 provides three avenues to relief from joint and several liability: (1) full or partial relief under subsection (b) (general relief provision applicable to all joint filers); (2) proportionate relief under subsection (c) (dealing with spouses who are no longer married, legally separated, or no longer living together); and (3) if relief is not available to the taxpayer under either subsection (b) or (c), equitable relief under subsection (f) (equitable relief).

This Court has jurisdiction to determine the appropriate relief available to a requesting spouse under section 6015(b), (c), and (f). *See* § 6015(e)(1)(A). We apply a de novo standard of review to any determination made by the Commissioner under section 6015. § 6015(e)(7); *see Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act § 1203, 133 Stat. at 988. Our scope of review, however, is limited to the administrative record established at the time of the Commissioner's determination and any newly discovered or previously unavailable evidence. § 6015(e)(7).[5] The taxpayer requesting relief under section 6015 generally bears the

[5] Subsection (e)(7) was added to section 6015 by Taxpayer First Act § 1203, 133 Stat. at 988, and applies to section 6015 petitions filed on or after July 1, 2019. *See Sutherland v. Commissioner*, 155 T.C. 95, 96–97, 105 (2020). Mrs. Soler petitioned this Court on October 15, 2019. Accordingly, section 6015(e)(7) defines both the standard and scope of review in this case.

**[\*6]** burden of proving that he or she is entitled to relief. *See* Rule 142(a); *Porter*, 132 T.C. at 210.

Mrs. Soler has requested relief from joint and several liability under section 6015(b) and (f).[6] We will address each claim in turn.

I.    *Section 6015(b)*

To be entitled to relief under section 6015(b), a taxpayer requesting relief must satisfy each of the following requirements: (1) a joint return was filed for the year(s) at issue; (2) the return(s) contain an understatement of tax attributable to an erroneous item of the nonrequesting spouse; (3) at the time of signing the return, the requesting spouse did not know and had no reason to know of the understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for the deficiency in tax attributable to the understatement; and (5) the requesting spouse's claim for relief is timely. § 6015(b)(1); *Alt v. Commissioner*, 119 T.C. 306, 313 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004).

The only requirements that are disputed by the parties are whether Mrs. Soler had knowledge or reason to know of the understatements at the time she signed the returns for the years at issue and whether it is inequitable to hold her liable for the deficiency. Mrs. Soler and the nonrequesting spouse filed a joint return for each year at issue, and the portions of the deficiencies that arise from the Schedule C businesses in tax years 2012 through 2014 and from Mr. Soler's retirement account distribution in 2015 are attributable to the nonrequesting spouse.

To be eligible for relief under section 6015(b), the requesting spouse must establish that he or she did not know and had no reason to know of the understatement on the return at the time he or she signed it. A taxpayer has knowledge or reason to know of an understatement if he or she actually knew of the understatement or if a reasonable

---

[6] In her initial request to the IRS, Mrs. Soler requested relief under section 6015(b), (c), and (f) and stated, in support of her request for relief under subparagraph (c), that she and Mr. Soler were not living together at that time. However, Mrs. Soler has since abandoned her argument under section 6015(c). Because Mrs. Soler has abandoned her argument under section 6015(c), and because she remains married to and resides with Mr. Soler, we conclude that she is not eligible for relief under section 6015(c).

[*7] person in similar circumstances would have known of the understatement. Treas. Reg. § 1.6015-2(c).

### A. *Actual knowledge*

A spouse lacks actual knowledge if she is unaware of the circumstances that gave rise to the error on the tax return. *See Bokum v. Commissioner*, 94 T.C. 126, 145–46 (1990), *aff'd*, 992 F.2d 1132 (11th Cir. 1993). In the case of omitted income, actual knowledge generally means knowledge of receipt of the income. Treas. Reg. §§ 1.6015-2(c), 1.6015-3(c)(2)(i)(A). In the case of erroneous deductions, actual knowledge means knowledge of the facts that made the item not allowable as a deduction. Treas. Reg. §§ 1.6015-2(c), 1.6015-3(c)(2)(i)(B); *see also Price v. Commissioner*, 887 F.2d 959, 963 n.9 (9th Cir. 1989).

The parties do not dispute that Mrs. Soler lacked actual knowledge of the understatements to the extent that they relate to items attributable to the nonrequesting spouse. Mrs. Soler credibly testified that she did not know the details of Mr. Soler's businesses and did not participate in them. We will therefore turn our discussion to whether Mrs. Soler had reason to know of the understatements.

### B. *Reason to know*

A taxpayer has reason to know of an understatement if a reasonable person in similar circumstances could be expected to know that there was an understatement or that further investigation was warranted. *Butler*, 114 T.C. at 283; Treas. Reg. § 1.6015-2(c). In determining whether a requesting spouse had reason to know of an understatement, we consider all of the facts and circumstances, including the requesting spouse's level of education, the requesting spouse's level of involvement in the family's business and financial affairs, the presence of unusual or lavish expenses compared to the family's past level of income and expenditures, and the nonrequesting spouse's level of evasiveness or deceit regarding the family's finances. *Price v. Commissioner*, 887 F.2d at 965; *see also* Treas. Reg. § 1.6015-2(c).

Because the relief provisions of section 6015 are "designed to protect the innocent, not the intentionally ignorant," *Dickey v. Commissioner*, T.C. Memo. 1985-478, 50 T.C.M. (CCH) 1041, 1046, the reason to know test establishes a duty of inquiry on the part of the requesting spouse, *Stevens v. Commissioner*, 872 F.2d 1499, 1505 (11th Cir. 1989), *aff'g* T.C. Memo. 1988-63; *Butler*, 114 T.C. at 283–84. A

[*8] spouse who does not fulfill this duty may be charged with constructive knowledge of the understatement. *Price v. Commissioner*, 887 F.2d at 965; *Porter*, 132 T.C. at 212. The duty of inquiry arises when a spouse is aware of sufficient facts to place him or her on notice that an understatement may exist. *Price v. Commissioner*, 887 F.2d at 965.

A requesting spouse cannot satisfy the lack of knowledge requirement simply by claiming that he or she did not review the return at issue before signing it. A taxpayer who signs a return is generally charged with constructive knowledge of its contents. *Porter*, 132 T.C. at 211.

Mrs. Soler contends that she did not have reason to know of the understatements on the dates she signed the returns. In her view she was an unsophisticated taxpayer who entrusted the family finances to Mr. Soler and did not participate in the Schedule C businesses. She further argues that Mr. Soler hid the existence of the bank accounts that he used for his Schedule C ventures and she, therefore, was not aware of enough facts to be put on notice that the understatements might exist. Accordingly, she contends that a reasonable person in her position would not have inquired any further into the returns than she did.

Mrs. Soler has not carried her burden of proving that she lacked reason to know of the understatements. Mrs. Soler is college educated, was the primary income earner for her household during the years at issue, and had some regular involvement in the household finances. On the dates she signed the returns for 2012 through 2014, Mrs. Soler believed that Mr. Soler did not work and had no income. As a result, the mere attachment of Schedules C to the 2012, 2013, and 2014 returns would raise questions about the validity of the returns in the mind of a reasonably prudent person in Mrs. Soler's position. This is particularly true in view of the fact that Mrs. Soler knew that her income alone was not sufficient to pay all of her family's routine expenses.[7] Additionally, the Schedules C that Mr. Soler completed showed net losses for tax years 2012 and 2013. The Solers were experiencing financial stress during the years at issue and were in the middle of a chapter 13 bankruptcy proceeding. Under those circumstances, a reasonably prudent person would certainly inquire about the loss-generating activity. Indeed, Mrs. Soler testified that, had she looked at the returns and noticed the

---

[7] Although Mrs. Soler has claimed that Mr. Soler's mother was providing monetary gifts to the family to pay expenses that her income could not cover, there is no documentation to support this claim in the administrative record.

[*9] reported losses, she would have asked her husband about them. However, even if Mrs. Soler did not actually review the returns, she is nonetheless charged with constructive knowledge of their contents because she signed them. Because Mrs. Soler did not fulfill her duty of inquiry, we conclude that she had reason to know of the understatements on the 2012, 2013, and 2014 tax returns.

Unlike the 2012, 2013, and 2014 understatements, the 2015 understatement arises from a failure to report as income on their 2015 tax return distributions that Mr. and Mrs. Soler took from their retirement accounts in 2015. Mrs. Soler claims that she did not review the 2015 return before signing it and was not aware that it contained an understatement. However, at the time Mrs. Soler signed the 2015 tax return, the IRS was examining the returns for 2012 through 2014 and had issued proposed adjustments for those years. Although Mrs. Soler chose not to participate in the audit, she admittedly knew that it was happening and even briefly spoke to the examining RA in May 2015. It is difficult to conceive of a more conspicuous notice that an understatement may exist or that some inquiry into the validity of a tax return is warranted than an audit of and proposed adjustment to the immediately preceding three years of tax returns. Because Mrs. Soler unreasonably and inexplicably failed to review the 2015 return, we conclude that she had reason to know of the understatement contained therein.

II.    *Section 6015(f)*

Section 6015(f) allows for relief from joint and several liability in cases where no relief is available under subparagraph (b) or (c) if, taking into account all facts and circumstances, it would be inequitable to hold the requesting spouse jointly and severally liable. § 6015(f)(1). Having found that Mrs. Soler is not eligible for relief under section 6015(b) or (c), we turn our inquiry to whether it would be inequitable to hold her liable for the tax due.

The IRS evaluates eligibility for relief under section 6015(f) using the framework set forth in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, *modifying and superseding* Rev. Proc. 2003-61, 2003-2 C.B. 296. Although we are not bound by the eligibility guidelines set forth in Rev. Proc. 2013-34, the Court considers the same factors when reviewing a taxpayer's claim for relief under section 6015. *See Pullins v. Commissioner*, 136 T.C. 432, 438–39 (2011). Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399–400, establishes several threshold conditions that

**[\*10]** the requesting spouse must satisfy to be considered for equitable relief: (1) a joint return was filed for the year(s) at issue; (2) the tax liability from which the requesting spouse seeks relief is attributable in full or in part to an item of the nonrequesting spouse; (3) relief is not available to the requesting spouse under section 6015(b) or (c); (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets (as defined by section 6015(c)(4)(B)) to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) the claim for relief is timely filed. The parties agree that Mrs. Soler satisfies these threshold conditions.

Once a taxpayer has satisfied the threshold conditions, we will consider whether the requesting spouse is eligible for streamlined relief or, if not, whether he or she qualifies under the full facts and circumstances test. Rev. Proc. 2013-34, §§ 4.02 and 4.03, 2013-43 I.R.B. at 400–03.

Streamlined determinations granting equitable relief under section 6015(f) are available if the requesting spouse can establish that he or she (1) is no longer married to the nonrequesting spouse; (2) would suffer economic hardship if relief were not granted; and (3) lacked knowledge or reason to know of the understatement at the time the return at issue was signed. Rev. Proc. 2013-34, § 4.02. The parties agree that Mrs. Soler is not eligible for a streamlined determination granting relief because she remains married to Mr. Soler.

If a requesting spouse is not eligible for streamlined relief, we will next and finally consider the request for relief, taking into account all the facts and circumstances. *Id.* §§ 4.02 and 4.03. The factors considered include but are not limited to (1) marital status; (2) economic hardship; (3) knowledge; (4) legal obligation to pay the tax; (5) the amount of benefit derived from the understatement or underpayment; (6) compliance with income tax laws; and (7) mental or physical health. *Id.* § 4.03. We analyze these factors in the light of the attendant circumstances, and no one factor is determinative. *Id.*; *see also Pullins*, 136 T.C. at 448–55.

A. *Marital status*

The marital status factor weighs in favor of relief when the requesting spouse is no longer married to the nonrequesting spouse and is neutral if the requesting spouse remains married to the

[*11] nonrequesting spouse.  Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400–01.  Because Mrs. Soler is still married to and residing with Mr. Soler, this factor is neutral.

B.    *Economic hardship*

This factor weighs in favor of relief when a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses.  *Id.* § 4.03(2)(b), 2013-43 I.R.B. at 401.  If denying relief would not cause the requesting spouse economic hardship, this factor is neutral.  *Id.*  Generally, this factor will not favor relief if a requesting spouse's income is greater than 250% of the federal poverty guidelines, unless her monthly income exceeds her reasonable basic living expenses by $300 or less.  *Id.*  Mrs. Soler's income exceeds 250% of the federal poverty guidelines, and she has not shown that her monthly income exceeds her reasonable basic living expenses by $300 or less.  This factor is neutral.

C.    *Knowledge or reason to know*

If the requesting spouse knew or had reason to know of the items giving rise to the understatement when the return was filed, this factor will weigh against relief.  *Id.* § 4.03(2)(c), 2013-43 I.R.B. at 401–02.  If the requesting spouse did not know or have reason to know of the understatement, this factor will weigh in favor of relief.  *Id.*  If the nonrequesting spouse was abusive or financially controlling, this factor may weigh in favor of relief even if the requesting spouse knew or had reason to know about the items giving rise to the understatement.  *Id.*

1.    *Actual knowledge*

Rev. Proc. 2013-34 is silent on actual knowledge with respect to understatements of tax.  However, we find that the regulations applicable to knowledge under section 6015(b) and (c) provide a helpful framework for analysis under section 6015(f).  *See, e.g.*, *Butler*, 114 T.C. at 292–93 (applying the same knowledge analysis performed under section 6015(b) to section 6015(f)); *Jacobsen v. Commissioner*, T.C. Memo. 2018-115, at *27 (applying the same knowledge analysis performed under section 6015(c) to section 6015(f)), *aff'd*, 950 F.3d 414 (7th Cir. 2020).  We accepted as credible Mrs. Soler's testimony that she did not participate in Mr. Soler's Schedule C businesses and did not have actual knowledge of his receipt of income in connection with those businesses in 2012, 2013, and 2014.  *See supra* p. 7.

**[\*12]**      2.      *Reason to know*

A spouse has reason to know of an understatement if a reasonable person in similar circumstances would have known that the return contained an understatement or that further investigation was warranted. *Butler*, 114 T.C. at 283; Treas. Reg. § 1.6015-2(c). The factors we consider in evaluating whether a requesting spouse had reason to know of an understatement include but are not limited to (1) the requesting spouse's level of education; (2) the requesting spouse's level of involvement in the activity giving rise to the understatement; (3) any deceit or evasiveness by the nonrequesting spouse; (4) the requesting spouse's degree of involvement in business or household financial matters; (5) the requesting spouse's business or financial expertise; and (6) any lavish or unusual expenditures compared with past spending. Rev. Proc. 2013-34, § 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

In evaluating whether Mrs. Soler qualified for relief under section 6015(b), we concluded that she had reason to know of the understatements for all years at issue because she failed to fulfill her duty of inquiry. *See supra* pp. 7–9. That same conclusion applies here. Consequently, we find that this factor weighs against granting relief.

D.      *Legal obligation*

This factor weighs in favor of relief when the nonrequesting spouse, through a divorce decree or other legally binding agreement, bears the sole legal obligation to pay the outstanding liability. Rev. Proc. 2013-34, § 4.03(2)(d), 2013-43 I.R.B. at 402. This factor will weigh against relief if the requesting spouse has the legal obligation to pay, and it is neutral if the divorce decree is silent as to tax liabilities or the spouses are not separated. *Id.* Because Mrs. Soler remains married to Mr. Soler, this factor is neutral.

E.      *Significant benefit*

This factor weighs against relief when the requesting spouse received a benefit in excess of normal support due to the understatement or underpayment of tax. *Id.* § 4.03(e), 2013-43 I.R.B. at 402. If the requesting spouse enjoyed the benefits of a lavish lifestyle, such as purchasing luxury items or going on expensive vacations, this factor weighs against relief. If the requesting spouse did not receive a significant benefit from the understatement, this factor weighs in favor of relief. *See Butner v. Commissioner*, T.C. Memo. 2007-136, 93 T.C.M. (CCH) 1290. Nothing in the record suggests that Mrs. Soler enjoyed a

**[\*13]** lavish lifestyle as a result of the understatements at issue, and respondent concedes that Mrs. Soler did not receive any benefit beyond having her income tax reduced by the erroneous items. This factor weighs in favor of relief.

### F. *Compliance with income tax laws*

If the requesting spouse remains married to the nonrequesting spouse and continues to file joint returns with the nonrequesting spouse after filing for relief, this factor is neutral if the subsequent joint returns comply with income tax laws, and it will weigh against relief if the subsequent joint returns do not comply. Rev. Proc. 2013-34, § 4.03(2)(f)(ii), 2013-43 I.R.B. at 402–03. Mrs. Soler filed joint returns with Mr. Soler for tax years 2016 through 2020, but the record is silent with respect to the compliance level of those returns. We will treat this factor as neutral.

### G. *Mental or physical health*

This factor weighs in favor of relief if the requesting spouse was in poor physical or mental health at the time the returns to which the request for relief relates were filed, or at the time he or she requested relief. *Id.* § 4.03(2)(g), 2013-43 I.R.B. at 403. If the requesting spouse was not in poor mental or physical health, this factor is neutral. *Id.* Mrs. Soler was not in poor mental or physical health at the time the returns for 2012, 2013, 2014, and 2015 were filed, nor was she in poor health when she requested relief from joint and several liability. This factor is neutral.

## III. *Conclusion*

After weighing the above factors and considering all of the attendant facts and circumstances, we are not persuaded that it would be inequitable to hold Mrs. Soler liable for the 2012, 2013, 2014, and 2015 tax liabilities. We conclude that the knowledge factor weighs heavily against granting relief. The significant benefit factor weighs slightly in favor of relief. While we do not base our decision on a simple tally of the factors, we conclude that five factors are neutral, one weighs slightly in favor of relief, and one weighs strongly against relief. After considering all the relevant facts and circumstances, we conclude that Mrs. Soler is not entitled to relief under section 6015(b) or (f).

**[*14]** We have considered all of the parties' arguments and, to the extent they are not discussed herein, find them to be irrelevant, moot, or without merit.

*Decision will be entered for respondent.*